## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ROBERT EDGAR KING,

    Plaintiff,

    v.                                                          Civil Action No.:  SAG-24-564

KIMBERLY STEWART,
ROBERT SALIBY,
D. FERGUSON,

    Defendants.

## MEMORANDUM OPINION

In response to the above-entitled civil rights complaint, Defendants Assistant Warden Kimberly Stewart, Officer Robert Saliby and Officer Darryl Ferguson have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment.  ECF No. 14.  Plaintiff Robert Edgar King, who proceeds pro se, has opposed the motion.  ECF No. 18.  Additionally, King has filed Motions to Amend Pleading and to Appoint Counsel.  ECF Nos. 16, 20 and 22.  No hearing is necessary to resolve the pending matters.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons that follow Defendants' motion shall be GRANTED in part and DENIED in part.  King's first motion to amend shall be GRANTED, the second motion to amend shall be DENIED without prejudice to refiling, and his motion to appoint counsel shall be GRANTED.

## I.    Background

King states that when he was confined at Patuxent Institution, he sent a public information act request to the Baltimore City State's Attorney's Office requesting a copy of the "discovery" from his criminal case.  ECF No. 1 at 2.  On August 9, 2022, the Baltimore City State's Attorney's Office sent King "legal mail" which contained a disc as well as written documents.  *Id*. at 3.

On September 16, 2022, Patuxent Institution received the discovery from the Baltimore City State's Attorney's Office by certified mail; Defendant Officer Daryl Ferguson signed for the receipt of the envelope. ECF No. 1 at 3.

King remained unaware that the requested discovery had arrived at Patuxent until he requested an update from the Baltimore City State's Attorney's Office and received a response from them on October 17, 2022, indicating it had been delivered. ECF No. 1 at 3. Upon learning of this, King began requesting, on multiple occasions, that the discovery be produced to him or that a reason for the non-disclosure be provided, but to no avail. *Id*. Rather, he was simply told that the legal mail had to be reviewed before he could receive it. *Id*.

King states that after he was denied access to his documents on multiple occasions, he contacted a relative and asked him to call Patuxent on his behalf. ECF No. 1 at 3. The relative spoke with Correctional Case Management Supervisor Christina Ripps, who stated that the file had to be reviewed before King could have access to it. *Id*. She further explained that when the file was first received, it was given to Lt. Robert Saliby to be reviewed and Lt. Saliby determined that pictures of the victim were included on the disc. *Id*. at 4. Ripps stated that at that time she was in possession of the disc. *Id*.

After learning this, King filed an administrative remedy procedure complaint ("ARP"). ECF No.1 at 4. King received the discovery in November from Assistant Warden Kimberly Stewart, who advised that the disc had to be reviewed per protocol before allowing an inmate to receive it, but she did not state that she or any other official had deleted files or otherwise modified the content of the disc. *Id*. At the time King received the disc, he was on segregation pending transfer to another institution and it was not until he was transferred to Maryland Correctional

Institution Hagerstown ("MCIH") that he had access to a computer as a general population inmate. *Id*.

On June 8, 2023, when King went to the institutional library to view the legal disc sent by the Baltimore City State's Attorney's Office, he noticed that the pictures of the victim, which were State's evidence in the case against him, were deleted along with other unknown State's evidence. ECF No. 1 at 4. King explains that the other unknown evidence that was deleted or modified was under sub-headings labeled Case File Pt. 1 and Case File Pt. 2. *Id*. He noticed that the deletions occurred on November 2, 2022 between the times of 7:46 a.m. and 9:28 a.m. *Id*. at 4-5.

King asserts that it was a violation of his constitutional rights and Division of Correction Directives ("DCD") to open his legal mail outside of his presence and to delete and/or modify the content of the disc contained in the legal mail. ECF No. 1 at 5. In particular, King states that Officer Ferguson's action of receiving the legal mail and then failing to notify King within the required time frames provided by the DCD violated his rights. *Id*. Additionally, in King's view, Lt. Saliby and Assistant Warden Kimberly Stewart improperly reviewed the legal mail without King being present and without his knowledge or consent. *Id*. King adds that Stewart authorized the deletion of files from the disc. *Id*. As relief, King seeks nominal and punitive damages. *Id*. at 6. King states that he would "also like to know what other content was deleted/modified and why." *Id*.

Lt. Saliby provides a declaration explaining that at all times relevant to this case, he was an "Intel Lieutenant" at Patuxent and his duties included reviewing incoming mail for contraband. ECF No. 14-4 at 1, ¶ 1. He states the disc that had been sent to King was brought to him in the original envelope from the Baltimore City State's Attorney's Office. *Id*. at ¶ 3. At that time, the envelope was already open, and Lt. Saliby does not know who opened the envelope or whether it

was opened in King's presence.  *Id*.  He further states that he had no knowledge of whether the envelope  contained anything other than the disc he reviewed.  *Id*.

When Lt. Saliby reviewed the disc, he saw that it contained numerous folders with various PDF documents and photographs.  ECF No. 14-4 at 1, ¶ 4.  One of those folders contained photographs of the murder victim lying completely nude in the hospital with bullet holes visible. *Id*. Lt. Saliby states that inmates "are not allowed to have photographs of their victims or photographs depicting nudity" so he "brought these photographs to the attention of Case Manager Supervisor Douglas Dill and Assistant Warden Stewart for direction on how to proceed."  *Id*.

According to Lt. Saliby, Assistant Warden Stewart spoke with King and informed him he could not have graphic photographs of the victim and proposed that "the various PDF files and allowed photographs" could be burned to a different disc and King could keep that modified disc on his person.  ECF No. 14-4 at 1-2, ¶ 5.  The original disc would be kept in King's base file and King could "request permission from the Warden to view the original disc in the presence of correctional staff at any time."  *Id*. at 2.  Assistant Warden Stewart told Lt. Saliby that King found this arrangement to be acceptable.  *Id*. at ¶ 6.  Based on that information, Lt. Saliby burned the disc with the photographs of the victim removed and had it delivered to King.  *Id*.  He delivered the original disc to King's case manager so that it could be placed in his base file.  *Id*.

In his Response in Opposition, King provides a copy of a November 18, 2024 Inmate Request Form submitted to the Warden's office at MCIH asking to review the original, unmodified disc that was placed in his basefile.  ECF No. 18-14 at 1.  The request was denied on November 20, 2024, on advice of the Attorney General's office.  *Id*.

II.    **Non-Dispositive Motions**

4

King's Motion to Amend the Complaint was filed on November 22, 2024, well within 21 days of the date Defendants filed their Motion to Dismiss or for Summary Judgment. ECF No. 16. King's proposed Amended Complaint is largely the same as his original complaint with the addition of his speculation that the deleted material from the disc "could be witness statements, DNA evidence, Brady evidence, or any other discovery under Md. Rule 4-263 that could be used to bring a legal claim in the courts to attack my sentence directly or collaterally." *Id*. at 7. King also adds that he is suing the defendants in their individual and official capacities. *Id*. The Motion to Amend shall be granted.

King also filed a Motion to Appoint Counsel citing his inability to afford an attorney, the difficulties his incarceration will cause on his ability to litigate, the complexity that a trial will be, and his unsuccessful attempts to retain counsel as reasons for appointment of counsel. ECF No. 20. Because this case will proceed to discovery and possibly to trial if settlement efforts fail, King's motion shall be granted. In light of the appointment of counsel, King's second Motion to Amend Complaint (ECF No. 22) is denied without prejudice to refiling after consultation with counsel.

## III.    Standard of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The court may "consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic[.]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir.

2007) (citation omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

6

Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because Defendants filed their motion as a motion to dismiss, or in the alternative, for summary judgment, Plaintiff was on notice that the Court could treat the motion as one for summary judgment and rule on that basis.

## IV.    Discussion

Defendants assert that the Eleventh Amendment bars this lawsuit against them in their official capacities; King has failed to exhaust administrative remedies; the allegations against Defendant Ferguson are inadequate to demonstrate his personal participation; King's public information act response was not legal mail and Patuxent maintains an interest in censoring nude photographs of murder victims; King has not alleged an actual injury in connection with his First Amendment claim regarding access to courts; and Defendants are entitled to qualified immunity. ECF No. 14-1.

### A.    Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that King failed to exhaust his administrative remedies. ECF No. 14. The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence. It provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). Therefore, a claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust. *See Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'… normally creates an obligation impervious to judicial discretion") (alteration in original)).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544,

548 (E.D. Va. 1999) ("The … PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines …." *Woodford*, 548 U.S. at 88. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (finding that "the inmate cannot be required to exhaust [administrative remedies] … when prison officials prevent inmates from using the administrative process").

The Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann., Corr. Servs. ("C.S."), § 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of a "grievance against an official or employee of the Division of Correction [DOC] …." C.S. § 10-206(a). Regulations promulgated by DPSCS concerning the ARP process define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO against any DOC official or employee. *See* C.S. § 10-206(a). When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO. However, if the prison has a grievance procedure that is

Case 1:24-cv-00564-SAG    Document 23    Filed 04/28/25    Page 10 of 19

approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. *See* C.S. § 10-206(b).

The ARP process consists of multiple steps. Initially, a prisoner is required to file his initial ARP request with his facility's "managing official," COMAR 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Correction. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).[1] When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). King attempted to file an appeal with the IGO but he states his effort was thwarted by staff at MCIH because they provided him with an ARP form listing an old address for the IGO and when he mailed his appeal to that address it was sent back to him as not deliverable.

---

[1] If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

10

ECF No. 18-1 at 20.  He maintains that because he was given erroneous information, he should be excused from exhausting all steps of the administrative remedy process.  *Id.*

An inmate need only exhaust "available" remedies.  42 U.S.C. § 1997e(a).  In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA."  *Id.* at 635.  In particular, it rejected a "special circumstances" exception to the exhaustion requirement.  *Id.*  But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'"  *Id.* at 636.  "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."  *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008), *see also Younger v. Crowder*, 79 F.4th 373, 380 (4th Cir. 2023) (plaintiff did not fail to exhaust administrative remedies where none were available to him due to ongoing IID investigation).

The Supreme Court stated in *Ross* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 578 U.S. at 642 (quoting *Booth*, 532 U.S. at 738).  Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit.  *See Chase*, 286 F. Supp. 2d at 529-30.  As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions.  *See Porter v. Nussle*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct).  Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure.  *See Booth*, 532 U.S. at 741.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play."  578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance

materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

King has offered objective evidence that he was misled as to where to mail his IGO appeal. *See* ECF No. 18-9 at 2 (listing two different addresses for the IGO). Therefore, the Court finds that there is at least a dispute of material fact as to whether King had administrative remedies available to him and will proceed to address the merits of his claims.

### B.    Official Capacity Claim

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from citizen suits in federal court absent state consent or Congressional action. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). The State of Maryland has not waived such immunity for claims brought pursuant to § 1983. Accordingly, Defendants are immune from suit for actions taken in their official capacity and the claims against them in their official capacity shall be dismissed.

C.      **First Amendment Claim**

Defendants assert that Officer Ferguson's action of signing for the package addressed to King is not enough to impose liability and that the package from the Baltimore City State's Attorney's Office was not legal mail because it was not marked "legal mail."[2]  They further claim that "Patuxent Institution" has a legitimate interest in censoring graphic, nude pictures of murder victims.  ECF No. 14.  King argues that the package containing his discovery documents falls squarely within the definition of legal mail because it was from an attorney, *see* ECF No. 14-2 at 2, ¶ D (DCD defining legal mail), and therefore he should have been notified that it arrived at the institution and it should have only been opened and inspected in his presence, *see id*. at 6.  Further, King asserts that he should have been provided notice of a decision to withhold mail when Ferguson received the mail, when the mail was opened, and when a decision was made not to provide it to King but to withhold it and review its contents.  ECF No. 18-1 at 17, *see also* ECF No. 18-3.

This Court agrees with King that the mail in question was "legal mail" as defined by the DCD.  It is difficult to discern how the Baltimore City State's Attorney's Office differs in any significant way from an "Attorney" as the sender of mail that qualifies as legal mail.  To attach an additional requirement that the mail must be labeled "legal mail," when that requirement appears nowhere in the directives, lacks credibility.  While it appears that Defendants abandoned any notion of following the applicable directives governing the handling of legal mail, that act of carelessness alone is not enough to sustain a constitutional claim.  As such, Officer Ferguson's act of signing the receipt for the mail is not sufficient to hold him liable for any constitutional violations that occurred thereafter.  Ferguson will therefore be dismissed from suit.

---

[2]      The regulation governing inmate mail attached to Defendants' Motion as an exhibit does not require such a label for mail to be considered legal mail.  ECF No. 14-2 at 2, ¶ D.

Prisoners have a constitutionally protected right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Moorehead v. Keller*, 845 F. Supp. 2d 689, 692 (W.D.N.C. 2012). While the interference by prison officials with certain types of mail may state a constitutional claim, occasional incidents of delay or non-delivery of mail do not rise to a constitutional level. *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997). "[P]olicies concerning legal mail require heightened scrutiny, but isolated incidents of mishandling of mail do not state a claim." *Barnes v. Wilson*, 110 F. Supp. 3d 624, 632 (D. Md. 2015); *accord Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983).

While the Fourth Circuit has made clear that a First Amendment claim of interference with a right of access to courts must include actual injury *see O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997), it has not clarified the standard applicable to a claim against prison officials' interference with legal mail. The Tenth Circuit has held that a First Amendment claim raised in connection with interference with delivery of legal mail must include an allegation of improper motive or resulting interference with the inmate's right of access to the courts. *See Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (holding where prison officials opened one piece of constitutionally protected legal mail by accident, no constitutional violation without any evidence of improper motive or resulting interference with the inmate's right of access to the courts). That analysis comports with the requirement of a showing of an actual injury for a viable First Amendment claim.

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order

14

to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'"  *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355).  "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches."  *Lewis*, 518 U.S. at 349.  Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts.  *Id*. at 399.

In *Christopher v. Harbury*, 536 U.S. 403, 403 (2002), the Court characterized access-to-the-courts claims as being in one of two categories.  *Id.* at 413-14.  The first, termed "forward looking claims," are cases where official action frustrates a plaintiff's ability to bring a suit at the present time.  *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004).  The second class, termed "backward looking claims," arise when a Plaintiff alleges that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case."  *Id*. at 1208.  In this way, the official action is said to have "'rendered hollow [the plaintiff's] right to seek redress' in the courts."  *Id*. (quoting *Christopher*, 536 U.S. at 415 (brackets in original) (internal citations omitted)).  King's claim is a "forward looking claim" because he alleges that his ability to file challenges to his conviction has been frustrated because he has been denied access to an unredacted copy of the discovery

15

documents provided to him in the public information response he received from the Baltimore City State's Attorney's Office.

At first glance, it appears that Defendants provided King with a reasonable accommodation for accessing the unredacted version of his legal documents by placing the original disc in his basefile, with the assurance that he may view the file upon his request in the presence of correctional staff.  ECF No. 14-4 at 1-2, ¶ 5 (Decl. of Saliby).  However, King submitted a request to the Warden's office at MCIH on November 18, 2024 to review the disc in his base file and he received the following response: "per the Attorney General's office, due to the nature of the images, and the arguments made in a recently filed motion, the institution has been advised to not permit the images to be viewed at this time."  ECF No. 18-14 at 1.  The response is signed "Warden's Office" and is dated November 20, 2024.  *Id*.  This response undermines Defendants' position that King was simply denied the images because he was not allowed to have those images "on his person" and that he was not harmed because the unmodified disc was kept where he could have access to it whenever he requested it.  King's protests that he does not know what material was removed from the disc are therefore credible and there is at least a dispute of material fact regarding the motives behind removing the material from the disc and preventing King from viewing the unredacted version.

## D.    Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "In particular, . . . qualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for

16

transgressing bright lines.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).  The defense provides protection for public officials for mistakes of law, mistakes of fact, or a combination of the two.  *See Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting).  Qualified immunity is a defense from suit, not simply liability, which is lost if a matter is improperly permitted to go to trial.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Resolution of whether an official is entitled to qualified immunity must be determined "at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In order to determine if a public official is entitled to the protections afforded by qualified immunity, two inquiries must be addressed by this Court.  Although the Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001) directed a rigid approach to the inquiries involved, the requirement that the two-prong analysis must be "considered in proper sequence" has since been revised.  *Katz*, 533 U.S. at 200.  Courts are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 818.

The first prong is whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201.  If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue.  *Id*.  If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability.  The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds."  *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007) (citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th

Cir. 2003)).  '"Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful. *Dist. of Columbia v. Wesby*, 583 U.S. 48, 61, 138 S. Ct. 577, 589 (2018) citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The law regarding access to courts for incarcerated individuals has been established for 48 years.  In this case there is a dispute of material fact regarding whether these Defendants had reason to believe that they were permanently depriving King of material he had already been deemed entitled to have under the Maryland Public Information Act and which he required for litigation of his claims challenging his conviction.  Thus, Defendants' qualified immunity defense is unavailing both because the constitutional right was well-established at the time of the incidents at issue and because there exists a material dispute of fact regarding whether the conduct allegedly violative of plaintiff's constitutional right occurred.  *See Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005).  While it is true that qualified immunity is ordinarily determined at the summary judgment stage of litigation, *see Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003), the defense of "[q]ualified immunity does not . . . override the ordinary rules applicable to summary judgment proceedings." *Willingham*, 412 F.3d at 559, citing *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

**V.    Conclusion**

By separate Order which follows, Defendants' Motion to Dismiss or for Summary Judgment is granted as to the official capacity claims and as to the claims against Defendant Ferguson and is otherwise denied. King's first Motion to Amend Complaint (ECF No. 16) is granted, his Motion to Appoint Counsel (ECF No. 20) is granted, and his second Motion to Amend Complaint (ECF No. 22) is denied without prejudice to refiling via counsel.


  April 28, 2025                                                    /s/
Date                                           Stephanie A. Gallagher
                                               United States District Judge